The next case today is Confederacion Hipica de Puerto Rico, Inc. et al. v. Confederacion de Jinetes Puerto Ricanos, Inc. et al. Appeal No. 19-2201 and Appeal No. 20-2172. Attorney Vizcarra, please introduce yourself for the record and proceed with your argument. Good morning, your honors. My name is Axel Vizcarra-Pellot. I am an attorney for the appellants along with the counsel Peter John Porrata. I would like to request at this time two minutes from our time for rebuttal, please. We may have it. The court is quite familiar with the procedural background of the case, so if you could turn to the issues, please. Gladfully will, your honor. This case, we are quite fortunate that the court is revisiting this issue. There was a 1979 decision from this court that has been used to basically enslave the people. Counsel, please. The first issue is whether the labor dispute exemption to the Sherman Act applies. Your argument is the district court erred in concluding that it didn't. Part of that argument is the district court mistakenly relied on a 1979 case, which in fact did not address the issue and says explicitly that the defense of the labor exemption was not raised. All right. Tell us why. Let's put that case aside. Tell us why, please, you think the labor exemption applies. Thank you, your honor. We will. In 1979, and we have to take that as a backdrop, there was no laws in Puerto Rico regulating the right to strike from the jockeys. In 1987, the legislature in Puerto Rico enacted law 83, and that law recognized, that law was enacted specifically to regulate everything that had to do with the horse racing industry and sport in Puerto Rico. For the first time, the act acknowledged and recognized that there was a right to picket and strike, and that was enacted in Article 12, I believe. Specifically, the language of the act stated that any group or syndicate that related to the horse racing industry or business had a right to strike as long as they followed certain steps. One of those steps was using the Article 12 within the powers of the horse racing administrator that was established by the law, so he would mediate in any kind of labor conflict. So, that was the first time that anybody could actually be recognized as to having a participation or bring up labor-related claims to the administration. All right, counsel. We understand your argument that Puerto Rico law gave a right to strike. The district court seemed to think that it was dispositive that your clients, the jockeys, were independent contractors. As I understand federal law, you can, nonetheless, have a labor dispute that is within the exemption, even if the people involved are independent contractors. Could you address that? Sure. Although the court recognized that as a second fact, the court later changed the reasoning as to whether it was a union or not. That was the first issue the court recognized or addressed, and then it says you don't have to be certified to do that. Now, I will address to the facts that it's been the real problem in this case to our knowledge. The jockeys have been for years trying to get a raise and have been subject to several discriminatory pay systems. Contrary to the United States. Let me ask you about the facts. Did the jockeys provide anything to the racetrack of the owners other than their labor? They provide also the image at some point because the races are used to transmit or to video betting or whatever in some other countries, the Dominican Republic and stuff like that. They do provide their labor and the fact of the matter, there are letters in the record for several years, like for 25 years actually, that they tried to get the racing commission or the owners to pay the equal, for the same job, pay the same as they do in the United States. It's the same job. Jockeys, we don't have, and I say we, I was fortunate to be in that profession and unfortunate to contrast the racing in the United States and Puerto Rico. Letters were sent throughout the years to different administrations. However, on the months prior to the labor claims and the meetings that jockeys requested, there were several actions, like for example, weight issues that were all of a sudden put in front and weight requirements put in front of the jockeys that were not in the rulings. Timing issues, what time you go in and what time you go out of the jockey's room. All these issues and labor conditions, they are labor conditions. That's the life of a jockey. Attempts against their health when you change weight requirements, when you change times to go in. Jockeys do not have holidays. Jockeys do not have Sundays, Saturdays in Puerto Rico. They have to be there to work. They have to leave their families. They have to please the public and please the racing audience. There were letters sent to the administration because the law, Article 12 actually, gives the faculty to the administrator to mediate and go into any kind of labor dispute. That was requested. Jockeys followed the strict letter of the law all along the way. Instead, the law grants the administrator 15 days so he could solve the issues like it happened in the past. However, the administrator refused to intervene. Jockeys went even further. Jockeys requested counsel. If I may, I understand you to be arguing that this has all the classic hallmarks of a labor dispute. It involved, as the labor the jockeys provided, it had to do with hours of work. It had to do with conditions of work. Now, suppose we agree with you that the labor exemption applies. There are still other issues in the case. One thing I am curious about is, if the labor exemption applies, what happens to your assertion that there was error and failure to address your counterclaims? If the labor exemption applies, do you still assert counterclaims or are they just part and parcel of the underlying Sherman Act dispute? They are part of the underlying labor Sherman Act dispute. All right, so if the labor exemption applies, I take it that from your point of view, you are no longer pressing your counterclaims. That is correct, Your Honor. Okay. There is still the contempt and sanctions finding which has to be dealt with. Is there anything else in the case that we would have to address if the labor exemption applies? If the labor exemption applies, I think that would be it. We brought before the attention of the court that the district court disregarded state law as far as the service to the wives and conjugal partnership because they were mentioned in the complaint and never served, Your Honor. All right, but as I understand it, if the labor exemption applies, then the judgment is vacated, dismissal is entered, and the question of whether the wives and the conjugal partnership are on the hook for the judgment disappears. I understand, Your Honor, and that is correct, yes. That is correct. Okay, thank you. You have reserved some time. Thank you, Your Honor. Thank you, Attorney Vizcarra. If I understand correctly, your co-counsel, Attorney Parada, is going to speak at rebuttal at the end, is that right? Yes. Thank you. Okay, so at this time, would you please mute your audio and video? Sure thing. And would next attorney, Attorney Porro, please unmute your audio and video at this time? Attorney Vizcarra, can you please mute your camera? Attorney, thank you, and thank you. Attorney Porro, please go ahead and introduce yourself on the record to begin. Yes, good morning, Your Honors. My name is Manuel Porro Vizcarra, and I will argue on behalf of both Plaintiff's Appellees, Confederation Ipica, and Camarero Racetrack. I just want to announce to the court with permission that the Brother Counsel, Lefranc Romero, will follow my presentation, and he will address the issues concerning the Rule 59e motion filed dealing with the offender to summons the wives and conjugates. Sure, that's fine. Go ahead. I would like to start with the question that was posed by this court to Brother Counsel Vizcarra. In order to determine whether there's a labor dispute or not, it's not just a matter of claiming benefits of employment. The Supreme Court has been crucial in indicating that we must look to the nature of the dispute to determine whether an employer-employee relationship has central on the question, and let's discuss that issue. The claims of the jockeys vis-a-vis the horse track corporation, Camarero, cannot be a labor dispute because Camarero was in no position to address the benefits or wages claim of the jockeys. Camarero and Confederation Ipica work with jockeys in a highly regulated industry by the government of Puerto Rico, and the only entities that can address wages and benefits for the jockeys is that administration, that agency of the government of Puerto Rico. So what basically the jockeys did is they entered concerted action to boycott races at the horse track when they knew that neither the horse track nor the owners of horses association could grant them any benefit. It would be the same thing as having the jockeys basically file boycott Whole Foods and just start that picket line and avoid customers to enter Whole Foods. That would not be a labor dispute because the jockeys have nothing that would relate to an employer-employee relationship with Whole Foods. Let me ask you a question about that. Certainly if Whole Foods contacted the regulatory agency and said we think the jockeys should get a raise, that probably wouldn't be of any moment, but if the horse racing owners joined with the jockeys to ask for an approved raise, wouldn't that be significant? Well, it would be significant in as much as the jockeys would not follow the proper procedure. The jockeys never filed before the agency of the Puerto Rico government a request to raise those wages and rates they claim that they have been enslaved through the whole years, even though the petition of the jockeys may be equitable, may be beneficial to the jockeys. I believe you missed the import of the question. You have said it cannot possibly fall within the labor dispute exception because this is a highly regulated industry and only the state regulators can provide the relief that they want. You seem to be mixing a doctrine of interpretation of labor dispute under the Sherman Act with other doctrines of law, but I'll just put that aside for the moment. Judge Kayada just suggested to you that your client, that both of the defendants, if they chose to exercise their influence with the state regulatory authorities, as opposed to flatly opposing any pay raise for the jockeys, could have some influence and therefore we have no control whatsoever over any remedy is not a convincing argument. So, would you like to respond to that? Sure, sure. The fact of the matter is that neither Camarero nor the Confederación Hípica ever opposed the pay raise. Did you ever support the pay raise? It was discussed, but did you support, yes or no? I believe that there were in which there were statements made that they had to run that petition with the appropriate governmental agency. There was never a denial of those rates. When you say you believe, are you referring to the record or what you believe? I'm referring to the information that I gathered in this litigation, your honor. And where in the litigation, where in the record is there evidence that the owners in any way supported the request of the jockeys for a higher wage? Well, I believe, your honor, that there's no evidence towards that point or to the point that they objected to those rates because they were in no position to agree or to object. All right. So, the record does not actually support your position. At least hypothetically, your clients could have supported the raise. So, let's just put that argument aside. What are your other arguments that this is not a labor dispute? It's not a labor dispute because the matrix of the controversy does not entail employer-employee relationship. Even though the appellants are not a certified union under federal law or state law, the case allows non-certified unions to claim labor exemption. However, the principle that it must relate to the employer-employee matrix has never been deleted. So, in the sense that neither the appellees would provide any response or change to the wages and conditions of the jockeys, basically doesn't make this a labor dispute because they were not able to provide the benefits that they were requesting. That's the same argument you made earlier. Do you have an independent argument? Your honor, I think the reasoning of the district court that the actions of the concerted refusal to deal with are totally unrelated to the actions of the management of the racetrack or the owners of the horses. And that's why it's not a labor dispute. All right. Thank you. Okay. Attorney Porro Vizcarra, at this time, if you could please mute your camera and your audio. And attorney LaFranc, if you could please introduce yourself on the record to begin. Good morning. Again, Roberto LaFranc for the record on behalf of appellees. Before I get to discuss the issues of the jurisdiction of the district court and of rule 59, I would like to to go together with jockeys, the governmental entities to give them a raise they're asking for many, many times. Counsel, I'm sorry. It wasn't whether they were willing. The question was whether the record showed that they had ever, in fact, supported the request of the jockeys with the regulatory authorities. Your Honor, Mr. Porro asked correctly, answered correctly. The record doesn't show, but we had multiple hearings held at chambers with Judge Dominguez. When we discussed this matter and we offered to go together with the jockeys to the governmental agencies, Judge Dominguez asked them to file the procedure before the times. It's not on the record because there were many, as I said, many hearings on chambers, like more than 10, I can say. It doesn't count. It doesn't count. You know that. I know. Just saying that we were willing, the owners were willing to go together with the jockeys to the governmental agencies, and we are still willing to go with them. Would it make a difference if the owners and the jockeys both went to the, would the jockeys stand a better chance if the owners, let me go back to San Juan Racing when San Juan Racing was held. After that, they both went to the administrative agencies. They presented different expert witnesses in accounting, and the administrative agencies then came down with a percentage that should be paid to the jockeys, and that percentage is the one that's still in the law as of today. It's a matter of going to the legislature to amend the law or to, first of all, to the administrative agency to discuss with them what is the percentage increase, if any, that they should have. It's as simple as that. Not going to the district court with a boycott. First of all, they went, you know, on a boycott and then going to the district court and says, oh. The initial question is not the boycott question. The initial question is the labor dispute exemption. Okay. They're not our, they're not employees of the owners. They're independent contractors. That is not the legal test. Okay, your honor. And there's no, as we said, there's. So you're going to address the rule 59 question, but do you agree with your opponent that if the labor exemption applies, the rule 59 issue drops out of the case? Yes, your honor, but only, I have to, I have to point out that they already filed a counterclaim where the wives and their voluntary jurisdiction of the court. I'm sorry. Okay. Do you agree with your brother that if the labor exemption applies, then the, and they have said that the counterclaim will no longer be pursued. It would drop out of the case. So do you agree that the counterclaim drops out of the case and the rule 59 question drops out of the case? That is correct, your honor. Okay. Thank you. Sure. So then I guess there's no need to discuss rule 59 then. Is that what you're saying? Or you want me to discuss it? No, no. I'm just setting the parameters. So if we reach the rule 59 question, what is your argument? Okay. Regarding rule 59, your honor, first of all, was untimely. Second of all, they waited until the last, untimely and they argued issues that should have been argued prior to judgment. If they are alleging, if they allege lack of personal jurisdiction, they knew or should have known since the beginning of the case. Pertaining lack of personal jurisdiction, our contention is that they submitted themselves to the jurisdiction of the court by filing the counterclaim on behalf of all defendants, not only the confederación de jinetes, but all defendants, including wives and conjugal partnership. The case law in Puerto Rico under first circuit is extensive as to the matter of submitting themselves to the jurisdiction. That's time. Okay. Anything else, counsel? No, thank you, your honor. Thank you for your time. Thank you. At this time, attorney Porrada, please unmute your audio and video and you have a two-minute rebuttal. Introduce yourself on the record to begin. Yes, my name is Peter John Porrada on behalf of the appellants. I would just like to add briefly, I've only got two minutes. I believe one of your honors questioned brother counsel Vicarra as to if the defendants, or in this case, the plaintiffs appellees, would have led or together would have bring it to the consideration of the entity to have a race for the jockeys. Brother counsel, mentioned they could have done so. I would just like to review what we have briefed in our brief that the parties, at least the appellants, exhausted the remedies they were entitled to exhaust on article 12 section 16 of the act 83. They went to the labor secretary the labor secretary to request a mediation hearing and what happened? Appellants tried to comply with the mediation hearing and none of the parties appeared at the mediation hearing. So, the mediation hearing had to be canceled. So, what did the appellants have? What alternative did the appellants have? They waited for 15 days to make sure they had exhausted that remedy and went for the strike which the act 93 entitles them to do so and that's what they did and this is what the appellees are attacking in their complaint. That we could have not done so because we had not were entitled to do so and the act is clear. It can't be only clear if you read thoroughly act 83 article 12 section 16 were entitled to that strike. That's barely it. If you have any questions in regards to this, I would just be glad to answer them. I see no questions from my colleagues and I have none. Thank you. Very well. That concludes argument in this case. Attorney Vizcarra, Attorney Parada, Attorney Porro, and Attorney LaFranche should disconnect from the hearing at this time.